## MATTER OF BURBANO

### In Deportation Proceedings

### A-38045964

### *Decided by Board September 13, 1994*

(1) When the Board of Immigration Appeals reviews a discretionary determination of an immigration judge, it relies upon its own independent judgment in deciding the ultimate disposition of the case.

(2) The Board does not have a de facto policy of denying relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (Supp. V 1993), to all aliens convicted of a serious drug offense; however, a serious drug crime will be accorded due weight, as is consistent with the evolution of the immigration law in this area, and may ultimately be the determinative factor in a given case.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2)(A)(i) [8 U.S.C. § 1251(a)(2)(A)(i)]—Crime involving moral turpitude

Sec. 241(a)(2)(A)(ii) [8 U.S.C. § 1251(a)(2)(A)(ii)]—Crimes involving moral turpitude

Sec. 241(a)(2)(B)(i) [8 U.S.C. § 1251(a)(2)(B)(i)]—Convicted of controlled substance violation

ON BEHALF OF RESPONDENT:
George J. DeFabio, Esquire
DeFabio & Fenn
2121 Ponce de Leon Boulevard,
Suite 430
Coral Gables, Florida 33134

ON BEHALF OF SERVICE:
William Gossard
General Attorney

BY: Dunne, Acting Chairman; Vacca and Heilman, Board Members; Holmes, Alternate Board Member

In a decision dated January 27, 1993, an immigration judge found the respondent deportable as charged under sections 241(a)(2)(A)(i), (A)(ii), and (B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1251(a)(2)(A)(i), (A)(ii), and (B)(i) (Supp. V 1993), as an alien who has been convicted of a crime involving moral turpitude within 5 years after entry, of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and of a controlled substance

violation. The immigration judge also denied the respondent's application for a waiver of inadmissibility under section 212(c) of the Act, 8 U.S.C. § 1182(c) (Supp. V 1993), and ordered him deported from the United States to his native country of Colombia. The respondent appealed from that decision. The appeal will be dismissed.

## PRELIMINARY DISCUSSION: STANDARD OF REVIEW

The only issue raised on appeal is whether relief from deportation is warranted as a matter of discretion. However, before discussing this matter, there is a preliminary issue to be addressed. The Board of Immigration Appeals has recently been questioned concerning the standard of review we utilize when considering a discretionary decision of the immigration judge, such as the section 212(c) application in the instant case. *See Ortiz-Salas v. INS*, 992 F.2d 105 (7th Cir. 1993); *see also Yepes-Prado v. INS*, 10 F.3d 1363 (9th Cir. 1993); *Campos-Granillo v. INS*, 12 F.3d 849 (9th Cir. 1993). Specifically, we have been questioned about the relationship between the Board and the immigration judge in terms of discretionary authority.

We state at the outset that when the Board engages in a review of a discretionary determination by an immigration judge, we rely upon our own independent judgment in deciding the ultimate disposition of the case. This is in accord with our mandate to "exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case." *See* 8 C.F.R. § 3.1(d)(1) (1994). The authority of the Board to issue a discretionary decision independent from that of the immigration judge has been recognized by the federal courts. *See, e.g., Panrit v. INS*, 19 F.3d 544 (10th Cir. 1994); *Huaman-Cornelio v. BIA*, 979 F.2d 995, 998-99 (4th Cir. 1992); *Ghassan v. INS*, 972 F.2d 631, 635 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1412 (1993); *Charlesworth v. INS*, 966 F.2d 1323, 1325 (9th Cir. 1992); *Hazzard v. INS*, 951 F.2d 435, 440 (1st Cir. 1991); *Cordoba-Chaves v. INS*, 946 F.2d 1244, 1249 (7th Cir. 1991). Thus, we do not employ an abuse of discretion standard when reviewing discretionary determinations of immigration judges.

The advantage of an independent standard of review is that it promotes uniformity in the application of the various discretionary provisions of the Act. *See Matter of Cerna*, 20 I&N Dec. 399, 405 (BIA 1991) (noting that a principal mission of the Board of Immigration Appeals is to ensure as uniform an interpretation and application of the immigration laws as possible), *aff'd, Cerna v. INS*, 979 F.2d 212 (11th Cir. 1992). We note in this regard that the individualistic nature of a discretionary determination permits the possibility that differing decisions may be reached based on essentially identical facts, with each decision arguably falling within a reasonable exercise of discre-

tion. If our review were limited to questioning whether the immigration judge abused his or her discretion, we would be unable to remedy such situations. However, by utilizing our own discretionary authority, there exists a forum available to promote uniformity of result.

Nevertheless, our independent review authority does not preclude the Board from adopting or affirming a decision of the immigration judge, in whole or in part, when we are in agreement with the reasoning and result of that decision. In this situation, the Board's final decision may be rendered in a summary fashion; however, such summary treatment of a case does not mean that we have conducted an abbreviated review of the record or have failed to exercise our own discretion. Rather, it is simply a statement that the Board's conclusions upon review of the record coincide with those which the immigration judge articulated in his or her decision.

Moreover, we recognize that the immigration judge who presides over a case has certain observational advantages due to his or her presence at the exclusion or deportation hearing. For example, the Board ordinarily gives significant weight to the determinations of the immigration judge regarding the credibility of witnesses at the hearing. See, e.g., Matter of Pula, 19 I&N Dec. 467 (BIA 1987); Matter of Magana, 17 I&N Dec. 111 (BIA 1979); Matter of T-, 7 I&N Dec. 417 (BIA 1957); cf. Ghassan v. INS, supra (recognizing that the Board retains power to make independent credibility determinations when appropriate). Similarly, we also may give significant consideration to other findings of an immigration judge that are based upon his or her observance of witnesses when the basis for those findings are articulated in the immigration judge's decision.

Finally, we acknowledge that questions concerning our standard of review were invited by occasional decisions of the Board which concluded that the immigration judge "did not abuse his discretion." We agree that the use of this and similar language can be misleading. However, such language is attributable to inartful drafting rather than to a limited review of the record on the part of the Board. We additionally point out that sometimes the only question raised on appeal to this Board is whether the immigration judge "abused his or her discretion." In this situation, our conclusion on the issue might simply represent a response to that specific argument on appeal. Nonetheless, we recognize the desirability of avoiding such language, and we reiterate that the Board relies upon its own independent judgment in deciding the ultimate disposition of a case when reviewing a discretionary determination of an immigration judge.

## THE RESPONDENT'S APPEAL

We now turn to the respondent's appeal, in which he contests the

denial of his application for a waiver of inadmissibility under section 212(c) of the Act.[1] The respondent argues that the immigration judge erred in finding that his equities are insufficient to outweigh the adverse factors of record. We have reviewed the record in its entirety, and we conclude that the immigration judge accurately considered the evidence presented and applied the relevant legal precedent. *See generally Matter of Marin*, 16 I&N Dec. 581 (BIA 1978); *see also Matter of Roberts*, 20 I&N Dec. 294 (BIA 1991); *Matter of Edwards*, 20 I&N Dec. 191 (BIA 1990); *Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988). We agree with the reasoning of the immigration judge's decision and with his conclusion that the application should be denied in the exercise of discretion. We therefore adopt the content of that decision and add only the following observations.

Although not specifically stated by the immigration judge, the respondent's lengthy criminal history requires him to show that he has unusual or outstanding equities in this country.[2] *See Matter of Buscemi, supra*. We concur with the immigration judge that the respondent's equities in this country, while significant, are insufficient to overcome his numerous criminal convictions.[3]

As the respondent has been a lawful permanent resident of the United States since June 1983, his period of residency extends only 3 years beyond the statutory minimum for section 212(c) relief. He has been incarcerated for a number of those years. Further, his first criminal conviction occurred only 3 years after his entry. These factors diminish the significance of the respondent's length of residence and prevent that residence from being deemed an outstanding equity.

With respect to the respondent's family ties, his mother and four

---

[1] Section 212(c) of the Act states:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

[2] The immigration judge stated instead that the respondent's equities fell "short of the requisite minimum."

[3] The respondent's criminal record includes three convictions for possession or attempted possession of cocaine, as well as a conviction for attempted robbery and two convictions for theft, all occurring between 1986 and 1990. The details of these convictions are set forth in the immigration judge's decision. However, the immigration judge neglected to mention the respondent's August 14, 1989, conviction in the Superior Court for the District of Columbia for unlawful entry. Consideration of this conviction only serves to further support the denial of the respondent's waiver application.

siblings are lawful permanent residents of the United States. Several of these relatives testified on his behalf at the hearing. However, neither their testimony nor any other evidence of record indicates that the adverse effect of deportation upon the respondent and his family will exceed that typically suffered by a family in this situation. Therefore, while we are sympathetic to the inherent difficulties involved in family separation, we cannot find that the respondent's family ties in this country qualify as unusual or outstanding equities. We further note that the respondent is married and has a United States citizen step-child. However, these factors are not dispositive even when considered in conjunction with the other equities presented in this case. We point out that the marriage occurred in 1992, during the pendency of these deportation proceedings, and that the respondent's wife is not legally in this country.

We further find, as did the immigration judge, that the respondent's employment history is not particularly notable, and that his evidence of rehabilitation does not present a significant equity in his favor. In this regard, we note that the respondent submitted evidence indicating that he performed well in the controlled environment of prison. However, after his release from his first documented period of incarceration, the respondent was convicted of theft. This post-release conviction diminishes the significance of any record of good behavior in prison, especially considering the respondent's long and varied criminal history. Similarly, due to the brief passage of time involved, we cannot accord considerable weight to the fact that the respondent has had no further convictions since being released from prison in February 1992.

Lastly, we note that the immigration judge did not find the respondent's testimony at the hearing regarding his past crimes to have been credible. The immigration judge's credibility determination, which was not challenged on appeal, militates against any claims of rehabilitation. Further, apart from any question with respect to rehabilitation, lack of candor in itself serves as an adverse factor weighing against a favorable exercise of discretion.

Having considered the record and the respondent's arguments on appeal, we find no basis for disturbing the decision of the immigration judge. Accordingly, the appeal will be dismissed. However, one final matter requires our attention.

## SECTION 212(c) RELIEF AND SERIOUS DRUG OFFENSES

As indicated above, it has been the established practice of the Board to balance the positive and negative factors of an individual case when making a discretionary determination under section 212(c) of the Act. *See, e.g., Matter of Marin, supra.* However, our practice in this regard

has recently been questioned by the United States Court of Appeals for the Sixth Circuit. *See Gonzalez v. INS*, 996 F.2d 804 (6th Cir. 1993); *see also Yepes-Prado v. INS, supra*, at 1370-72. In *Gonzalez v. INS, supra*, the respondent had been found deportable based upon her convictions for drug offenses, one of which involved possession with intent to distribute approximately 2 kilograms of cocaine. The Board dismissed her appeal from an immigration judge's discretionary denial of her application for a waiver of inadmissibility under section 212(c) of the Act. Upon petition for review, the Sixth Circuit upheld the Board's decision. However, the court found "some merit" in the respondent's contention that the Board engages in a "de facto" policy of denying section 212(c) relief to aliens convicted of a single and serious drug offense. *Id.* at 810. Because we have never adopted such a "de facto" policy, we believe this matter should be further addressed.

Initially, we note that during oral argument in *Gonzalez v. INS, supra*, the court requested that Government counsel provide examples of Board decisions granting section 212(c) relief to "serious" drug offenders.[4] In response, the Government submitted a decision granting a waiver which had been issued by the Board several days earlier. In its decision, the court found that this submission of a single decision granting relief "leaves the impression" that the Board has a policy of denying relief in all cases in which an alien has been convicted of a serious drug offense. *Id.* at 810. We believe the court's reference to a single favorable decision may be somewhat misleading. The case presented to the court was intended to provide a contemporaneous example of the type of decision requested by the court and to refute the allegation that the Board would "never" grant discretionary relief to an alien convicted of a serious drug crime. The decision was submitted solely for illustrative purposes and was not represented to be the only such decision, nor was it intended to be an indication that section

---

[4]The definition of a "serious" drug offense can certainly be subject to differing opinions. In providing information to be used to respond to the court's request, we viewed a "serious" drug offense as a drug trafficking crime which constitutes an "aggravated felony" under the Act. *See* section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (Supp. V 1993). We acknowledge that within this category of offense, certain crimes will be more or less serious than others, and that the degree of seriousness in a given case might be its determinative factor. However, we would be hesitant to characterize any aggravated felony as "hardly serious," as the court appeared to do, due to the congressionally mandated treatment of this category of offenses. *Gonzalez v. INS, supra*, at 810. For example, section 243(h)(2) of the Act, 8 U.S.C. § 1253(h)(2) (Supp. V 1993), renders an alien convicted of any aggravated felony to be ineligible for withholding of deportation, even if it is established that the alien faces imminent harm or death due to persecution in his or her native country based on any of the enumerated grounds. *See also* section 208(d) of the Act, 8 U.S.C. § 1158(d) (Supp. V 1993).

212(c) waivers involving serious drug crimes would only be issued under identical circumstances.

This having been said, however, it should not be unexpected that individuals who have been convicted of serious drug offenses may well have a difficult time prevailing on appeal before this Board. First, as noted by the court, the Board reviews "only a small percentage of the total number of cases heard by immigration judges [who] are also vested with the discretion to grant relief." *Gonzalez v. INS, supra*, at 810. Indeed, virtually all cases before the Board involving applications for relief under section 212(c) have been adjudicated by an immigration judge after a full hearing on the merits, in proceedings in which the applicant for relief carries the burden of proof.[5] Many such applications are granted by the immigration judges and one would expect that the most deserving cases ordinarily will have been resolved in favor of the applicant at this level.

Moreover, certain groups of aliens are less likely than others to be successful in meeting their burden of demonstrating that a favorable exercise of discretion is warranted, due to the particular nature of their crime or crimes. Indeed, it has been long understood that as an alien's crimes become more serious, there will be less likelihood that he or she will be able to establish that a favorable exercise of discretion is warranted. There may also be situations where the specific crime or crimes involved in a given case will ultimately be the determinative factor in a decision. For example, if an individual has been convicted of a particularly heinous murder, that fact in itself may be dispositive of the discretionary issue, regardless of the nature of the equities presented. It would be disingenuous to suggest otherwise.

Likewise, an alien who has committed a serious drug offense will face a difficult task in establishing that he or she merits discretionary relief. The detrimental effect on society resulting from drug violations has been consistently recognized by Congress in the clear distinctions that have been drawn between drug offenses and other crimes and the disparate treatment that has been accorded to different types of criminals. *See generally Matter of Gonzalez*, 19 I&N Dec. 682 (BIA 1988). The immigration law disfavors drug offenders by subjecting them to exclusion and deportation from this country and by limiting

---

[5] As it is often a source of confusion, we point out that both the immigration judges and the Board of Immigration Appeals are part of the Executive Office for Immigration Review and are independent of the Immigration and Naturalization Service, which is a separate entity within the United States Department of Justice. *See* 8 C.F.R. §§ 3.0, 100.2 (1994). The Board has been independent of the Service since June 1940 when immigration responsibilities were transferred from the Secretary of Labor to the Attorney General. Immigration judges have been fully independent of the Service for over a decade.

their eligibility for the various forms of relief from exclusion and deportation. This is particularly true of aliens whose drug offenses constitute aggravated felonies under the Act; indeed, aliens convicted of aggravated felonies are subject to stricter procedures in general. *See, e.g.*, sections 242, 276(b)(2) of the Act, 8 U.S.C. §§ 1252, 1326(b)(2) (1988); section 242A of the Act, 8 U.S.C. § 1252a (Supp. V 1993); *see also supra* note 4.

It has been firmly established that aliens convicted of serious drug offenses are required to show unusual or outstanding equities before discretionary relief under section 212(c) will be further considered. *See Ayala-Chavez v. INS*, 944 F.2d 638 (9th Cir. 1991); *Blackwood v. INS*, 803 F.2d 1165 (11th Cir. 1986) (per curiam); *Matter of Buscemi, supra*; *Matter of Duarte*, 18 I&N Dec. 329 (BIA 1982); *Matter of Marin, supra*. Additionally, Congress recently amended section 212(c) of the Act to preclude relief to those who have committed an aggravated felony for which they have served a term of imprisonment of 5 or more years. *See* section 212(c) of the Act; *see also Matter of Ramirez-Somera*, 20 I&N Dec. 564 (BIA 1992). Thus, it is increasingly evident that Congress disfavors granting relief from deportation to aliens who commit serious drug offenses. Consequently, an alien convicted of a serious drug offense should be aware of the difficulties to be faced in obtaining discretionary relief. We emphasize that this observation should not be taken as an indication that the Board will never award relief to an alien convicted of a serious drug offense. *See Matter of Cerna, supra*, at 403-04. Rather, it is an acknowledgement that a serious drug crime or crimes will be accorded due weight, as is consistent with the evolution of the immigration law in this area.

In sum, this Board has never implemented, in law or in fact, a strict policy of denying section 212(c) relief to every alien convicted of a serious drug offense without regard to the totality of circumstances presented in the case. Our established practice has been, and continues to be, to premise discretionary determinations on the individual factors presented in a given case.

**ORDER:**    The appeal is dismissed.